UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 99-0270-CAS | Date | August 12, 2013 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Myra Ponce | Michael Stern |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| ADEL YOSEF DARDOON | X | X | | EDWARD ROBINSON | X | | X |
| | | | | TECIA BARTON | X | | |

**Proceedings:** **DEFENDANT'S MOTION TO DISMISS THE INDICTMENT** (filed July 9, 2013)

## I. INTRODUCTION

On October 9, 1998, the government filed a criminal complaint in this district charging defendant Adel Dardoon with participation in bank fraud and conspiracy, in violation of 18 U.S.C. §§ 371 and 1374. An indictment charging the same was filed on March 23, 1999, at which time a bench warrant for Dardoon's arrest was also issued. Dkt. No. 82.

Not until June 2012, when defendant first returned to the United States, was he arrested on these charges and detained. On July 9, 2013, defendant filed a motion to dismiss the indictment for post-accusation delay. Dkt. No. 346. The government opposed the motion on July 29, 2013. To date, no reply has been filed. On August 12, 2013, the Court held a hearing. After considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Defendant, a United States citizen, is accused of participating in an alleged ten million dollar bank fraud conspiracy beginning as early as January 31, 1996, and continuing until on or about May 28, 1997. An indictment was returned by the Grand Jury on March 23, 1999.

On December 15, 1998, United States Secret Service Special Agent Frank R. O'Donnell contacted the United States Marshal Service requesting their assistance in locating defendant,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

among others, relating his concern that these subjects would flee if they discovered that they were being sought in conjunction with a criminal investigation. Def.'s Ex. A. On January 5, 1999, O'Donnell contacted the Israeli government, seeking their assistance in locating defendant, whom O'Donnell referred to as "the principal suspect. Def.'s Ex. B. FBI Special Agent Terry Chodosh also contacted the Israeli government seeking information about defendant's whereabouts. The Israeli Police responded that they had no information on his whereabouts. Def.'s Ex. C. After these communications, there is no evidence in the record that the government made any further attempts to detain defendant until he returned to the United States in 2012.

For much of this time, defendant had "at least" two U.S. Passports, one that had "Israeli stamps" in it and one that did not, which both expired around November 2006 or February 2007. Although a declaration is not attached to defendant's motion, he "declares" that he went on multiple occasions to the U.S. Consulate and Embassy in Tel Aviv and Jerusalem, Israel to reapply for his passports. According to the government, these statements are false, as defendant in fact applied for and obtained his passports solely via mail in 2008. Gov't Ex. 1. He applied for both of these passports under the name "Eddie Dardoon." His prior passports, however, were under the names "Eddie Dardon" and "Adell Dardoon." On at least one of these applications, defendant listed an address in Rosemead, California as his mailing address, in addition to providing his social security number and date of birth.

On June 30, 2010, defendant met with FBI Special Agent Andre Khoury at the U.S. Consulate in Jerusalem. Def.'s Ex. F.[1] Defendant does not state why he met with the agent; according to the agent's interview report, defendant requested the meeting because that he wanted to speak to the FBI regarding information on fugitives, threats to Palestinians, and fraud. Id. According to the report, defendant disclosed his birth date, social security number, and U.S. Passport number, as well as his current address in "Ram, Ramallah, West bank."

He further advised the agent that he left the United States in 1998 to help his ill mother in the West Bank. He related that during his time in the United States, he "had several interactions with law enforcement" and that he "got in trouble for some credit card fraud" but that "he [did] not think any charges [were] still pending." He also said that he wanted to move back to California for his children's sake, and that he planned to do so as soon as he sold his house in the West Bank, which he expected to accomplish in about two months time. According to the

---

[1] This interview was given under one of defendant's other names, Eddie Dardoon; the communique sent to the Israeli government indicates that defendant had multiple other aliases, including Yousef Al-Farouq. Def.'s Ex. B.

report, defendant also indicated that he would let Agent Khoury know once his plans for traveling to the U.S. were finalized. The interview lasted approximately an hour. Gov't Ex. 2. It is unclear from the record whether or not Agent Khoury knew of the outstanding arrest warrant for defendant in the United States at the time of the interview. Khoury testifies that he never heard from defendant after this interview.

On June 6, 2012, an FBI Special Agent in Los Angeles notified his colleagues in Houston that Dardoon was scheduled to arrive the next day on a flight from Qatar. It is not apparent from the record how the FBI determined that Dardoon was on this flight or that there was an outstanding warrant in his name. Upon arrival in Houston, Dardoon was immediately detained by federal authorities; at that time, he allegedly acknowledged that he was the subject in question wanted by the Secret Service. On June 8, 2012, Dardoon had his initial appearance before a magistrate judge, with a further appearance on June 12, 2012. He was ordered detained pending trial. Thereafter, the parties stipulated to two extensions of his trial date, first to March 5, 2013, and then until August 20, 2013.

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." The Court applies a four factor balancing test, set forth in Barker v. Wingo, 407 U.S. 514 (1972), to determine whether a defendant's speedy trial rights have been violated. These factors are: "[1] whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result." Doggett v. United States, 505 U.S. 647, 651 (1992).

### A. Length of the Delay

The Court first considers the length of the delay, which is the "triggering mechanism" for the remainder of the speedy trial right inquiry. Without a delay that is prima facie prejudicial, a defendant lacks a Sixth Amendment claim. See, e.g., U.S. v. Corona-Verbera, 509 F.3d 1105, 1114 (9th Cir. 2007). Here, the Court has no difficulty concluding that a twelve and a half year delay between indictment and arrest is presumptively prejudicial, as courts have repeatedly found delays of lesser duration to qualify under this standard. Because this delay "is long enough to be considered presumptively prejudicial," an inquiry into the other three factors is required. United States v. Mendoza, 530 F.3d 758, 762 (9th Cir. 2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

 B. **Reason for the Delay**

 The next criterion asks whether the government or the defendant is to blame for the presumptively prejudicial delay.  The government has "some obligation" to pursue a defendant in order to bring him to trial.  Mendoza, 530 F.3d at 762–63 (quoting United States v. Sandoval, 990 F.2d 481, 485 (9th Cir. 1993)).  "Where the government is negligent in pursuing a defendant, prejudice will be presumed and its weight in defendant's favor will depend on the length of the delay."  United States v. Aguirre, 994 F.2d 1454, 1456 (9th Cir. 1993).  The question then is whether the government has acted "negligently" in bringing a defendant to trial.

 Where a defendant flees the country and becomes a fugitive with knowledge that he has been indicted, "[t]here is no requirement that law enforcement officials make heroic efforts to apprehend [this] defendant who is purposefully avoiding apprehension."  United States v. Sandoval, 990 F.2d 481, 485 (9th Cir. 1993) (quotation omitted); see also Aguirre, 994 F.2d at 1458.  Relatedly, where the "government has a good faith belief supported by substantial evidence that seeking extradition from a foreign country would be futile, due diligence does not require our government to do so."  United States v. Corona-Verbera, 509 F.3d 1105, 1114 (9th Cir. 2007).  The government cannot be said to be acting negligently under such circumstances.

 On the other hand, "if the defendant is not attempting to avoid detection and the government makes no serious effort to find him, the government is considered negligent in its pursuit."  Mendoza, 530 F.3d at 763.  In this latter circumstance, where the defendant has no knowledge of the indictment or charges against him, it cannot be said that he is actively seeking to avoid trial, and therefore the government's burden to locate and bring the defendant to trial in an expeditious manner is greater.  The government is negligent in ignoring, willfully or otherwise, a defendant who is living openly under his given identity for a number of years—even abroad.  See Doggett, 505 U.S. at 652–53; Mendoza, 530 F.3d at 763.  Cf. United States v. Shell, 974 F.2d 1035, 1036 (9th Cir. 1992) (holding the government was negligent where it misplaced the defendant's file for five years).

 Based on the evidence in the record thus far, the Court finds that this factor weighs in favor of the government, as on the whole, the government did not act negligently in pursuing defendant and bringing him to trial.  The government was actively trying to located defendant beginning in October of 1998 based on a warrant that was then under seal.  By December 1998, the Secret Service recognized that its efforts to locate defendant domestically were proving unsuccessful, and it sought the assistance of both the United States Marshals Service and Israeli government.  In February 1999, the Israel government reported back that it had no record of Dardoon or his family entering the country.  Thereafter, the record is devoid of any further efforts on the part of the government to locate defendant until he landed in Texas in June 2012.

      However, defendant does not appear to dispute that he spent the vast majority of this time abroad living in the West Bank, under the control of the Palestinian Authority, with whom the United States does not have an extradition treaty. In the absence of an extradition treaty, proper "due diligence" did not require the government to seek defendant's extradition through some other means, even if, contrary to the facts before the Court, the government knew where he was residing. See Corona-Verbera, 509 F.3d at 1114 (holding that the government is not negligent where Mexico had an extradition treaty with the United States, but extradition of the defendant on drug related charges was likely futile at the time). At least until 2008, when defendant submitted his passport applications, the government could not have acted negligently in failing to pursue defendant to locations unknown. The government had reason to believe that defendant had traveled to Israel, but the government fulfilled its duty of due diligence when it contacted the Israeli authorities and did not receive any potential leads on defendant's whereabouts.

      This stands in contrast to the Mendoza case, where the government knew that the defendant had traveled to the Phillippines to stay with relatives, and it had successfully communicated with him while he was in the Phillippines with respect to a potential criminal investigation. Nevertheless, once defendant was indicted, "the government simply put a warrant out on the law enforcement database so that Mendoza would be detained when he returned to the United States," without making any effort to inform the defendant that he had been indicted or to otherwise locate him. Id. Not until the defendant returned to the United States and was arrested eight years later did he first learn of the indictment. Id. Because the government failed to make "some effort" to actively attempt to find him and bring him to trial, the court held that "the delay between Mendoza's indictment and arrest was caused by the government's negligence." Id.[2] Here, there is no evidence in the record that the government had any knowledge of defendant's whereabouts and therefore no basis for finding that the government acted negligently, at least until 2008, when defendant first resurfaced.

---

    [2] Doggett v. United States, 505 U.S. 647 (1992), presents a situation of even greater "negligence" on the part of the government. There, the defendant initially traveled to Panama before learning of his indictment, where the government determined that it would be futile to attempt to extradite him. Defendant returned to the United States two years later, where he then lived openly. Six years after his return to the United States, the Marshal's Service ran a credit check for persons subject to outstanding arrest warrants, and defendant was arrested shortly thereafter. Because the defendant had no knowledge of his indictment, and the government "egregiously" failed to prosecute the case, the Court held that this a delay was impermissible under the Sixth Amendment; the indictment was dismissed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

A more difficult question is presented after 2008, when government authorities could have discovered defendant's whereabouts. It is disputed whether defendant in fact traveled to Israel in 2008 as part of his application to renew his two U.S. Passports. According to the government, these passports were mailed to defendant in 2008, although where these passports were mailed to is unclear from the record.[3] Even if the government's recounting is accurate, the government likely should have known at this point in time that defendant was residing in the West Bank. There was, however, no way to extradite him from that territory, which greatly diminishes the duty on the government to continue pursuing him in what would be a futile attempt to obtain his extradition once he was detained.

Then in 2010, defendant traveled to Israel to speak with FBI Special Agent Khoury, apparently on defendant's own initiative. Although Agent Khoury noted defendant's birth date, social security number, address, and telephone number in the report, there is no indication that he did anything to determine whether defendant had an outstanding warrant. After an hour, the interview concluded and defendant apparently returned to the West Bank. Defendant contends that it would have taken only "a modicum of effort" to discover his identity and obtain a provisional arrest warrant from Israeli authorities during his brief time in Israel, but that the government negligently failed to avail itself of the opportunity.

The Court concludes, however, that the government did not act negligently in failing to apprehend defendant at the time of his interview, based on the information obtained during the interview or from defendant's successful passport applications. First, although defendant provided identifying information to the agent, he gave his name as Eddie Dardoon, which is not the name under which he was indicted. Second, Dardoon allegedly indicated during the interview that he was planning on moving back to the United States in two months, and that he explained that he would keep the agent apprised of his travel plans once they were finalized. Based on this information, even if the government was actively seeking his arrest, the government could have assumed that he would be returning on his own in the near future, avoiding resort to a protracted extradition process, as explained below. Third, this interview ended after an hour, with no indication that Dardoon remained in Israel thereafter, as the undisputed facts demonstrate that he and his family resided in the West Bank. As noted, he could not be extradited from this territory.

The fact that Dardoon allegedly informed the agent that he "got in trouble for some credit card fraud" but that he did not "think any charges are *still* pending" arguably should have put

---

[3] Why the government issued these passports, despite the pending warrant for his arrest, remains unexplained.

the government on inquiry notice that defendant was potentially a wanted man in the United States. If the government was diligently seeking to detain defendant, the agent would have inquired further as to whether charges were, in fact, still pending. But the government did not do so.

This failing, however, does not render the government negligent. According to the testimony of a Senior Trial Attorney in the Office of International Affairs of the Department of Justice, it was unlikely that the government could have obtained a provisional arrest warrant for defendant in a matter of hours.[4] Obtaining such a warrant from Israeli authorities takes days in "non-urgent" situations like this one, where there is no obvious flight risk or danger to the Israeli public stemming from an individual charged with fraud. Consequently, it would have been very difficult for the government to detain defendant during his brief trip to the consulate in Jerusalem. And after an arrest, extradition from Israel to the United States generally takes about two years to wind through the court system, which means that defendant may have not actually been extradited until the time of his actual reentry in this case.

Taken as a whole, the Court finds that this factor weighs against defendant. The evidence in the record demonstrates that the government could have acted with greater diligence in pursuing defendant and bringing him to trial, but that the government's conduct does not rise to the level that is considered negligent.[5] Had defendant remained in Israel this entire time, or even had he remained in Israel after his interview with the FBI, the outcome of this analysis may well have been different. But because by all appearances defendant immediately returned to a place from which he could not have been extradited after his interview with the FBI, the government was not negligent in failing to pursue him.

### C. Assertion of Right to Speedy Trial

The Court granted two continuances in this case, finding excludable delay from June 26, 2012 to March 5, 2013, and again from March 5, 2013 until August 20, 2013, pursuant to the parties' stipulations. These considerations, standing alone, would render this factor neutral.

---

[4] Although this witness appears knowledgeable about the subject of her testimony, she is, of course, not a disinterested witness

[5] The Court does not directly consider the defendant's culpability in any delay in this section, as the Supreme Court has instructed that a defendant's knowledge of the indictment or charges against him is to be weighed as part of Barker's third criterion, concerning invocation of the right to a speedy trial. Doggett, 505 U.S. at 653.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

See Corona-Verbera, 509 F.3d at 1116 (finding that where a defendant requests numerous continuances, this factor is neutral).

However, where a defendant knew of his indictment or the charges against him "years before he was arrested," this third factor weighs "heavily" against the defendant. Doggett, 505 U.S. at 653. "The Speedy Trial Clause primarily protects those who assert their rights, not those who acquiesce in the delay—perhaps hoping the government will change its mind or lose critical evidence." Aguirre, 994 F.2d at 1457; see also id. (noting that a defendant's knowledge of the charges against him "further undermines [a] speedy trial claim").

Here, unlike in Doggett, defendant apparently knew of the "charges" against him in the United States. His alleged admission demonstrates that defendant knew that the charges were related to credit card fraud—the factual locus of the indictment in this case—and yet defendant left the country and did not return. Because defendant apparently knew of the charges against him, yet failed to answer them, he bears significant responsibility for the delay he encountered in obtaining a trial. Therefore, the Court finds that defendant's claim that his speedy trial rights were violated is substantially diminished, as he knowingly delayed many years in asserting his right to a speedy trial.[6]

### D.  Prejudice to the Defendant

"The Supreme Court has recognized three forms of prejudice that can result from post-indictment delay: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) 'the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence.'" United States v. Mendoza, 530 F.3d 758, 764 (9th Cir. 2008) (quoting Doggett, 505 U.S. at 654).

---

[6] Where "in the face of an indictment, a defendant takes affirmative steps to elude law enforcement and thus causes the delay himself," the Barker balancing test does not apply. Aguirre, 994 F.2d at 1457 (citing Sandoval, 990 F.2d at 481). In these circumstances, courts find that the defendant has "waived" his right to a speedy trial through his own conduct. Id. While the evidence here supports a finding that defendant knew of the charges against him, it is unclear if defendant learned of these charges before or after he left the country. This is distinguishable from cases where a defendant "skipped bail" in the face of an indictment. See id. at 1456 (applying the Barker test where the defendant had previously "heard of the charges against him" but did not flee in the face of an indictment).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Because the Court finds that the government acted with reasonable diligence in pursuing defendant, and that defendant himself bears responsibility for much of the delay, defendant cannot avail himself of the "presumption" of prejudice. See Corona-Verbera, 509 F.3d at 1116.[7] Instead, he must demonstrate that "specific prejudice" has resulted, or he will be unable to prove that a Sixth Amendment violation has occurred.[8]

At present, defendant has not made any showing of actual prejudice that will result from the delayed prosecution of this case against him. However, given the lengthy delay in bringing this case to trial, defendant may yet be able to demonstrate that his ability to put on an effective defense may have been prejudiced. The Court does not yet have before it the state of the evidentiary record related to the indictment or information regarding the availability of witnesses favorable to the prosecution and defense.

Even if the defendant were able to demonstrate that he has or will suffer some form of actual prejudice as a result of the delay in bringing him to trial, however, the Court concludes that on balance, the Barker factors do not warrant dismissal here. Although the twelve-year delay between indictment to the time of arrest is lengthy, the government acted with reasonable diligence in pursuing defendant given his residency in a territory that lacked an extradition treaty with the United States. Moreover, defendant allegedly acknowledged that he learned of the nature of the fraud charges against him at some point in time, which is weighed heavily against him in the Barker framework. Based on the totality of the foregoing, the Court concludes that there was no violation of defendant's Sixth Amendment speedy trial right. Accordingly, his motion to dismiss the indictment against him is denied.

---

[7] Where the defendant is not responsible for the delay in bringing him to trial and the government has acted negligently, prejudice to the defendant is presumed, which the government may rebut only through a "persuasive" showing. See Shell, 974 F.2d at 1036.

[8] Even if the Court were to find that the government acted negligently, defendant's knowledge of the charges against him would substantially diminish any claim that he asserted his right to a speedy trial in a timely fashion. Doggett holds that a defendant's "acquiescence" in the delay, based on his knowledge of the charges against him, extenuates any prejudice he may have suffered as a result of the delay. 505 U.S. at 658; see Aguirre, 994 F.2d 1454, 1457 (9th Cir. 1993) ("Doggett holds that we should presume prejudice only if the defendant isn't responsible for the delay.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

## V. CONCLUSION

In accordance with the foregoing, defendant's motion to dismiss the indictment is hereby DENIED.

IT IS SO ORDERED.

|  | 00 | : | 30 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |